## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Safeco Insurance Company of Illinois,<br><br>Plaintiff,<br><br>v.<br><br>Levi Richard Burton and Morgan McClurg,<br><br>Defendants. | Case No. 22-cv-00598 (SRN/DTS)<br><br><br>**ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Christian A. Preus and Jeffrey R. Mulder, Bassford Remele, 100 South 5th Street, Suite 1500, Minneapolis, MN 55402, for Plaintiff.

Amber Stavig, Dudley and Smith, P.A., 1295 Northland Drive, Suite 250, Mendota Heights, MN, 55120; Katherine A. Brown Holmen, Katherine Holmen, 1295 Northland Drive, Suite 250, Mendota Heights, MN 55120; Francis J. Rondoni and Mikael Jeffrey Ingvaldson, Chestnut Cambronne, P.A., 100 Washington Avenue South, Suite 1700, Minneapolis, MN 55401; Heidi M. Torvik, Lommen Abdo, P.A., 920 Second Avenue South, Suite 1000, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Safeco Insurance Company of Illinois' ("Safeco") Motion for Judgment on the Pleadings [Doc. No. 22]. For the reasons set forth below, the Court grants Safeco's Motion.

## I.    BACKGROUND

This action stems from an incident between Defendants Levi Richard Burton and Morgan McClurg that occurred at The Armory, an event venue in downtown Minneapolis, on December 14, 2019. (Compl. [Doc. No. 1] ¶ 13.) The underlying facts are not in dispute.

1

A.      **The Incident at the Armory**

On the evening in question, Defendants were separately attending a concert at The Armory. (Compl. ¶ 13; *id.*, Ex. 4 (McClurg Compl.) ¶ 6, 8.) Around 10:00 p.m., Ms. McClurg became aware of a group of men who were "grossly intoxicated and causing trouble." (McClurg Compl. ¶ 9.) Mr. Burton was part of this group. (*Id.* ¶ 16.) He and the other men began to focus on Ms. McClurg and her friends, threatening and pushing them. (*Id.* ¶ 10.)

Concerned that there would be "an altercation or violence" without The Armory's intervention, Ms. McClurg reported the group's behavior to a bartender. (*Id.* ¶ 11.) The bartender suggested that she speak with a security guard. (*Id.* ¶ 11–12.) Ms. McClurg then spoke with two different security guards, explaining the behavior, "the need for urgent intervention, and the fact that the drunk individuals appeared violent[.]" (*Id.* ¶ 12–13.) The security guards apparently took no action in response to Ms. McClurg's warnings. (*Id.* ¶ 12–14.)

When Ms. McClurg returned to her friends, the intoxicated men initiated an "altercation and a fight." (*Id.* ¶ 15.) During the fight, Mr. Burton punched Ms. McClurg in the face. (*Id.* ¶ 15–16.) Ms. McClurg suffered severe injuries to her jaw, face, and head as a result. (*Id.* ¶ 20.)

For these actions, Mr. Burton was charged with Third Degree Assault in violation of Minn. Stat. § 609.223. (Compl., Ex. 1 (Petition to Enter Plea of Guilty ("Plea Petition")) at 1.) On December 9, 2020, Mr. Burton pleaded guilty to Disorderly Conduct in violation of Minn. Stat. § 609.72, subd. 1(3). (*Id.*) In pleading guilty, Mr. Burton attested as follows:

> I committed the following acts (state sufficient facts to establish a factual basis for all elements of the offense(s) to which the defendant is pleading guilty): While attending a concert at The Armory in Minneapolis, MN, I engaged in boisterous and noisy conduct the [sic] would tend to reasonably arouse alarm, anger or resentment in others. While doing so, I was attacked by an unknown person. I reflexively responded in what I reasonably believed was self-defense by taking a swing at my attacker. Unfortunately, that punch missed my attacker and instead, I struck an innocent bystander, M.M.

(*Id.*) Ms. McClurg is the "innocent bystander" identified as M.M. (Compl. ¶ 19.)

In addition to performing community service, Mr. Burton was ordered to pay restitution to Ms. McClurg in the amount of $2,386.50 as part of his sentence. (Compl., Ex. 2 (Sentence) at 1.)

### B.     Ms. McClurg's Lawsuit

On January 25, 2022, Ms. McClurg filed suit against Mr. Burton and The Armory in Hennepin County District Court. (Compl. ¶ 22; *see generally* McClurg Compl.) Ms. McClurg's Complaint states her belief that while "punching her in the face was not what Defendant Burton intended, although in his intoxicated state, whomever he was trying to strike was not the Plaintiff, but he nonetheless stuck [sic] the Plaintiff in the face with his fist." (McClurg Compl. ¶ 16.) She alleges that Mr. Burton "engaged in disorderly conduct, and as a result of that, negligently injured the Plaintiff[.]" (*Id.* ¶ 29.) Ms. McClurg thus asserts a cause of action for negligence against Mr. Burton, seeking damages for the injuries that resulted from his punch. (*Id.* ¶ 20–23, 28–30.)

**C.     The Policy**

Mr. Burton held a Homeowners Policy (the "Policy") with Safeco for the period of September 19, 2019 to September 19, 2020. (Compl. ¶ 29; Compl., Ex. 5 (Policy).) The Policy provides the following coverage under "Coverage E – Personal Liability":

> If a claim is made or a suit is brought against any insured for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:
> 1. pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and
> 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the ***occurrence*** equals our limit of liability.

(Policy at 14 (emphasis in original).) "Occurrence" is defined as "an accident, including exposure to conditions which results in: (1) bodily injury; or (2) property damage[.]" (*Id.* at 25.) Pursuant to this provision, Safeco agreed to provide Mr. Burton with a defense against Ms. McClurg's lawsuit, subject to a reservation of rights to deny defense and indemnity insurance coverage. (Compl. ¶ 28.)

Under "Liability Losses We Do Not Cover," the Policy contains two exclusions relevant here:

> 1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to ***bodily injury*** or ***property damage:***
>    a. which is expected or intended by any ***insured*** or which is the foreseeable result of an act or omission by any ***insured***;
>    This exclusion applies even if:
>    (1) such ***bodily injury*** or ***property damage*** is of a different kind or degree than expected or intended; or
>    (2) such ***bodily injury*** or ***property damage*** is sustained by a different person, or persons, than expected or intended . . .

4

        b.   which results from violation of criminal law committed by, or with the knowledge or consent of any ***insured***.
           This exclusion applies whether or not any ***insured*** is charged or convicted of a violation of criminal law, or local or municipal ordinance.

(Policy at 14–15.)

### D.    This Lawsuit

Safeco filed this action against Defendants on March 8, 2022, seeking a declaratory judgment that the Policy does not require it to defend or indemnify Mr. Burton against Ms. McClurg's lawsuit. (Compl. ¶ 32–48.)

In Count I, Safeco seeks a declaration that Exclusion 1(b) ("criminal-acts exclusion") excludes coverage for Ms. McClurg's injuries because Mr. Burton pleaded guilty to the criminal charge of disorderly conduct, and thus Safeco has no duty to defend or indemnify Mr. Burton. (*Id.* ¶ 32–39.) In Count II, Safeco seeks a similar declaration based on Exclusion 1(a) ("intentional-acts exclusion"). (*Id.* ¶ 40–42.) Finally, Count III seeks a declaration that Ms. McClurg's injuries were not caused by an "occurrence" as defined within the Policy, and therefore Safeco has no duty to defend or indemnify. (*Id.* ¶ 43–48.)

On August 18, 2022, Safeco filed a Motion for Judgment on the Pleadings [Doc. No. 22]. Safeco moved only with respect to Count I, arguing that the criminal-acts exclusion bars coverage for Ms. McClurg's injuries as a matter of law. (*See* Pl.'s Mem. [Doc. No. 24] at 1.) Mr. Burton and Ms. McClurg oppose Safeco's Motion, arguing that

questions of material fact as well as disagreements about the law preclude judgment on the

pleadings. (*See* Burton Opp'n [Doc. No. 29]; McClurg Opp'n [Doc. No. 33].)[1]

## II.    STANDARD OF REVIEW

Safeco moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on

the pleadings as to the Policy's criminal-acts exclusion. Judgment on the pleadings is

appropriate if, "accepting all facts pled by the nonmoving party as true and drawing all

reasonable inferences from the facts in favor of the nonmoving party, the movant has

clearly established that no material issue of fact remains and that the movant is entitled to

judgment as a matter of law." *Schnuck Markets, Inc. v. First Data Merch. Servs. Corp.*,

852 F.3d 732, 737 (8th Cir. 2017). The Court ordinarily does not consider matters outside

the pleadings on a motion under Rule 12(c). *See* Fed. R. Civ. P. 12(d). The Court may,

however, "consider the pleadings themselves, materials embraced by the pleadings,

exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand

Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186

F.3d 1077, 1079 (8th Cir. 1999)).

In addition, "because granting a Rule 12(c) motion 'summarily extinguish[es]

litigation at the threshold and foreclose[s] the opportunity for discovery and factual

presentation,' courts must treat such motions with the 'greatest of care.'" *Acosta v.

Reliance Tr. Co.*, No. 17-cv-4540 (SRN/ECW), 2019 WL 3766379, at *7 (D. Minn. Aug.

---

[1] Because Mr. Burton and Ms. McClurg retained separate counsel and filed separate memoranda in opposition to Safeco's Motion, the Court designates each memorandum with the respective Defendant's name. (*See* Burton Opp'n; McClurg Opp'n.)

9, 2019) (quoting *Comcast Cable Commc'ns, LLC v. Hourani*, 190 F. Supp. 3d 29, 32 (D.D.C. 2016)).

## III.    DISCUSSION

Safeco argues that Mr. Burton's guilty plea to the criminal charge establishes, under the plain language of the criminal-acts exclusion, that the Policy excludes coverage for Ms. McClurg's injuries and that therefore Safeco has no responsibility to defend or indemnify Mr. Burton. (Pl.'s Mem. at 5–10; Pl.'s Reply [Doc. No. 34] at 2–9.) In response, Mr. Burton asserts that the evidence does not establish that he committed a criminal act, that the criminal-acts exclusion violates public policy as overbroad, and that Safeco has an ongoing duty to defend. (Burton Opp'n at 4–9.) Ms. McClurg, for her part, contends that Mr. Burton lacked sufficient intent to trigger the criminal-acts exclusion, that the exclusion is ambiguous, that Mr. Burton's violation of criminal law did not cause her injuries, and that the severity of Mr. Burton's crime does not merit applying the exclusion. (McClurg Opp'n at 6–15.)

State law determines the interpretation of insurance policies. *Nat'l Union Fire Ins. Co. of Pittsburg v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003). In Minnesota, the interpretation of an insurance policy is a question of law governed by general contract interpretation principles. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894–95 (Minn. 2006). As with all contracts, the goal is to "ascertain and give effect to the intentions of the parties as reflected in the terms of the policy." *King's Cove Marina, LLC v. Lambert Com. Constr., LLC*, 958 N.W.2d 310, 316 (Minn. 2021) (citation omitted). "While the insured bears the initial burden of demonstrating coverage, the insurer

carries the burden of establishing the applicability of exclusions," which are construed narrowly. *Travelers Indem. Co.*, 718 N.W.2d at 894; *King's Cove Marina*, 958 N.W.2d at 316.

When terms or phrases are not specifically defined, they are given their "plain, ordinary, and popular meaning." *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 842 N.W.2d 622, 632 (Minn. 2012). If language is ambiguous—in that it is susceptible to more than one reasonable interpretation—it will be resolved in favor of the insured. *Mut. Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999); *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). However, courts must not "read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.*, 173 N.W.2d 21, 24 (Minn. 1969) (citations omitted).

The existence of a duty to defend or indemnify is a legal question. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998). "Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend." *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960). The insurer "must show that each claim asserted in the lawsuit clearly falls outside the policy." *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W.2d 411, 418 (Minn. 1997) (quotation omitted). The duty to defend is "broader" than the duty to indemnify, meaning that an insurer must still provide the defense while contesting coverage. *Haarstad v. Graff*, 517 N.W.2d 582, 585 (Minn. 1994) (quoting *Econ. Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 826 (Minn. 1989)).

### A.      Plain Language of the Policy

The criminal-acts exclusion precludes coverage for bodily injuries "which result[]

from violation of criminal law committed by, or with the knowledge or consent of any

insured." (Policy at 14.)

#### 1.      Safeco's Position

Safeco argues that application of this exclusion to the facts in this case is

straightforward: Mr. Burton is an insured under the Policy, Ms. McClurg suffered injuries

to her face, jaw, and head from a punch thrown by Mr. Burton while he engaged in

disorderly conduct, and Mr. Burton pleaded guilty to and was sentenced for disorderly

conduct, a criminal offense. (Pl.'s Mem. at 9–10; *see also* Plea Petition at 1; McClurg

Compl. ¶ 15–16.) By its plain language, Ms. McClurg's negligence claim for her injuries

"clearly falls outside" the Policy. *Meadowbrook*, 559 N.W.2d at 418.

As further support for this interpretation, Safeco points to two cases from the

Minnesota Court of Appeals. (Pl.'s Mem. at 7–10 (discussing *Liebenstein v. Allstate Ins.*

*Co.*, 517 N.W.2d 73 (Minn. Ct. App. 1994) and *SECURA Supreme Ins. Co. v. M.S.M.*, 755

N.W.2d 320 (Minn. Ct. App. 2008)).) In *Liebenstein v. Allstate Ins. Co.*, Allstate sought a

declaratory judgment that a criminal-acts exclusion barred coverage for injuries caused

after the insured, Mr. Sunde, was arrested for driving under the influence of alcohol. 517

N.W.2d at 74. At the station following his arrest, Mr. Sunde scuffled with officers

attempting to remove his handcuffs and dislocated an officer's thumb. *Id.* For this incident,

Mr. Sunde pleaded guilty to charges of assault in the fifth degree and of obstructing legal

process. *Id.*

The officer then sued Mr. Sunde for his injuries. *Id.* The exclusion in Mr. Sunde's insurance policy provided: "We do not cover bodily injury . . . resulting from: (a) a criminal act or omission." *Id.* at 75. Although both Mr. Sunde and the officer testified that the injury was accidental and that Mr. Sunde had not tried to hurt or even hit the officer, the court affirmed the district court's determination that the criminal-acts exclusion excluded coverage for the officer's injuries. *Id.* at 74–75. The Court of Appeals reasoned as follows:

> [The officer] testified that his thumb was dislocated during the struggle with Sunde. Sunde pled guilty to and was convicted of two criminal counts: fifth-degree assault and obstructing legal process. It is undisputed that [the officer's] injury resulted from these criminal acts. The plain language of the policy thus excludes coverage for the injury.

*Id.* The same elements are present here: an accidental (according to Mr. Burton and Ms. McClurg) injury during an altercation and a subsequent guilty plea and conviction for the insured's role in the altercation.

In the second case cited by Safeco, *SECURA Supreme Ins. Co. v. M.S.M.*, the insureds sought coverage for injuries sustained by a neighbor who was stabbed by their son. 755 N.W.2d at 322. The son pleaded guilty to and was convicted of attempted first-degree murder, and the neighbor sued the insureds under theories of negligence as well as assault and battery. *Id.* The insurance company sought a declaratory judgment that the criminal-acts exclusion in the insureds' homeowners policy excluded coverage for the neighbor's suit. *Id.* The relevant policy language provided: "Medical [p]ayments to [o]thers do not apply to bodily injury . . . [w]hich: . . . (3) Results from the criminal acts of any insured." *Id.* (alterations in original).

The insureds argued that the exclusion could not apply because their son, due to his mental illness, could not form an intent to harm the neighbor. *Id.* at 324. Relying on *Liebenstein*, the court explained that "in order to trigger a criminal-act exclusion, an insurer must establish that the insured committed a criminal act; but it is not required to also show that an insured possessed an intent to injure." *Id.* at 325. Thus, the court held that the son's conduct fell within the meaning of "criminal acts" as used in the exclusion in the Policy.

Safeco notes that, like Mr. Burton's altercation at The Armory, these cases involve insureds whose actions led to an injury and who pleaded guilty to and were sentenced for an offense from the injurious incident. Moreover, the exclusions considered in *Liebenstein* and *SECURA* contain language markedly similar to the exclusion at issue here: "resulting from . . . a criminal act," *Liebenstein*, 517 N.W.2d at 75, "[r]esults from the criminal acts," *SECURA*, 755 N.W.2d at 322, and "results from violation of criminal law," (Policy at 14).

## 2. Defendants' Positions

### a. Criminal Acts

Defendants each argue, via independent but related theories, that Mr. Burton did not commit a crime within the meaning of the exclusion. First, Mr. Burton asserts that guilty pleas, generally, do not conclusively establish that a crime was committed for the purposes of an insurance exclusion, and that his guilty plea, specifically, cannot be conclusive evidence of a crime because he reacted in self-defense, an affirmative defense to a criminal charge. (Burton Opp'n at 4–7.)

For support, Mr. Burton relies on *Johnson v. West Bend Mutual Insurance Company*, where the Minnesota Court of Appeals held that statements in an insured's plea

transcript were insufficient to show an absence of material fact as to whether the victim's injuries arose from a criminal act. No. A17-1957, 2018 WL 6596270 (Minn. Ct. App. Dec. 17, 2018). But in *West Bend*, the insured was convicted via an *Alford* plea, which allows a district court to accept a guilty plea "even if the defendant claims innocence, so long as the defendant acknowledges on the record that the state's evidence is sufficient for a jury to find her guilty beyond a reasonable doubt and the district court concludes that the record contains a strong factual basis for the plea." *Id.* at *6.

In the insured's plea, she "denied harming [the victim], acknowledging only that the state's evidence would be sufficient to convict her." *Id.* at *8. In fact, the insured maintained that she was not even in the same room as the victim at the time of injury. *Id.* at *1, *8. Thus, "without a clearer admission of her conduct or of her guilt," the insured's "equivocal plea statements" could not conclusively establish that she committed a crime. *Id.* at *8. Here, Mr. Burton did not maintain his innocence, or deny punching Ms. McClurg, at the plea hearing. Consequently, *West Bend* does not support the proposition that Mr. Burton's guilty plea raises a question of material fact on the criminality of his actions. His guilty plea is conclusive of that fact that Mr. Burton committed a crime.

Second, Ms. McClurg argues that because Mr. Burton acted in self-defense, he did not act with the requisite intent to commit an assault. (McClurg Opp'n at 10–13.) Additionally, Ms. McClurg argues that because "criminal act" is not defined by the Policy, the criminal-acts exclusion is ambiguous and should be construed in Mr. Burton's favor. (*Id.* at 14–15.)

As for Mr. Burton's criminal intent, Minnesota courts have repeatedly "declined to inquire into subjective intent when interpreting policy provisions that do not reference intent." *N. Star Mut. Ins. Co. v. Erickson*, No. A22-0784, 2023 WL 125852, at *4 (Minn. Ct. App. Jan. 9, 2023) (citing *SECURA*, 755 N.W.2d at 325). And the criminal-acts exclusion in Mr. Burton's Policy contains no language referencing intent. (Policy at 14 (excluding coverage for bodily injuries "which result[] from violation of criminal law committed by, or with the knowledge or consent of any insured").)

Moreover, where a policy has separate exclusions for criminal and intentional acts, "the intent requirement does not extend to the criminal-act exclusion." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir. 2010) (citing *SECURA*, 755 N.W.2d at 325 and *Liebenstein*, 517 N.W.2d at 75–76). In Mr. Burton's Policy, "[t]he intentional act exclusion and the criminal act exclusion are in separate numbered paragraphs . . . and there is no language linking the two paragraphs." *Liebenstein*, 517 N.W.2d at 75; (Policy at 14). "[U]nlike the intentional-acts exclusion, the [criminal-acts exclusion] does not contain words invoking intent, e.g., 'expected,' 'intended,' or 'intentional and malicious." *N. Star*, 2023 WL 125852, at *4 (finding no intent required for sexual misconduct exclusion). Mr. Burton's subjective intent—whether to injure Ms. McClurg or to defend himself—is thus irrelevant to determining whether he committed a "violation of criminal law." (Policy at 14.)

Ms. McClurg's ambiguity argument also fails. To begin with, the Policy excludes injuries from "violation[s] of criminal law," not from "criminal acts," so Ms. McClurg's insistence on a definition for "criminal acts" is somewhat confounding. (McClurg Opp'n

at 14–15.) Regardless of the precise language used, the Eighth Circuit has emphasized that "[a]lthough the same conduct can, in some circumstances, be both a civil tort and a crime, conduct that would constitute a criminal act is readily ascertainable by resort to statutory law and should not surprise most insureds." *Country Mut. Ins. Co. v. Orloske*, 820 F.3d 335, 339 (8th Cir. 2016) (applying criminal-acts exclusion under Minnesota law); *see also Ill. Farmers Ins. Co. v. Rodgers*, Nos. C7-02-425, C9-02-426, 2002 WL 31554598, at *2 (Minn. Ct. App. Nov. 19, 2002) (relying on a Nebraska case holding that "penal law" is synonymous with "criminal law" and that both are "easily understandable and unambiguous" to hold that "violation of penal law" is not ambiguous). The Court agrees that conduct which constitutes a "violation of criminal law" is readily ascertainable and concludes that the criminal-acts exclusion in the Policy is unambiguous.

In sum, the Court finds that Mr. Burton's guilty plea establishes the criminality of his conduct within the unambiguous meaning of the Policy.

### b.     Causation

Ms. McClurg also argues that Safeco cannot establish the causation required by the criminal-acts exclusion. (McClurg Opp'n at 6–9.) She asserts that it is "plausible, if not likely, that Burton's actions that resulted in McClurg's injuries on December 14, 2019, resulted from his negligence, or his attempts at non-criminal self-defense, rather than from the criminal act of disorderly conduct." (*Id.* at 8.)

The Policy excludes coverage for injuries which "result[] from" criminal acts by the insured. (Policy at 14.) Under Minnesota law, "'[r]esulting from' has the same ordinary and plain meaning as 'arising out of.'" *Mork Clinic v. Fireman's Fund Ins. Co.*, 575

N.W.2d 598, 602 (Minn. Ct. App. 1998); *SECURA*, 755 N.W.2d at 326 (same). And the phrase "arising out of" means "'causally connected with' and not 'proximately caused by.'" *Meadowbrook*, 559 N.W.2d at 419 (citation omitted); *Nat'l Hydro Sys., a Division of McNish Corp. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 693 (Minn. 1995) (interpreting the phrase "arise out of or result from" in a construction contract indemnity provision to require a "temporal, geographical or causal nexus between the [indemnitor's] work and the injury which gives rise to liability." (citation omitted)). Thus, "[t]he relevant inquiry when determining whether there is coverage for a claim is the direct cause of the injuries." *N. Star*, 2023 WL 125852, at *5.

Mr. Burton's actions easily meet this broad definition of causation. But for his punch, Ms. McClurg would not have suffered any injury. Ms. McClurg's attempt to distinguish Mr. Burton's punch from his disorderly conduct is belied by the statement in his guilty plea, in which Mr. Burton stated that he "engaged in boisterous and noisy conduct" and that "[w]hile doing so" he struck Ms. McClurg. (Plea Petition at 1.) The plea statement establishes that Mr. Burton's punch was part and parcel of the disorderly conduct. Ms. McClurg's injuries therefore share a "temporal, geographical, [and] causal nexus" with Mr. Burton's criminal disorderly conduct, satisfying the causal relationship required by the Policy. *Nat'l Hydro Sys.*, 529 N.W.2d at 693.

Further, even if Ms. McClurg's injuries were the result of Mr. Burton's "negligent invocation of his right to self-defense," the criminal-acts exclusion would still apply. (McClurg Opp'n at 9.) The criminal-acts exclusion bars coverage "when there is a causal connection between the excluded conduct and the injuries, even if negligence by the

15

insured also contributed to the injuries." *N. Star*, 2023 WL 125852, at \*6 (citing *SECURA*, 755 N.W.2d at 322, 327 and *Amos ex rel. Amos v. Campbell*, 593 N.W.2d. 263, 267, 269 (Minn. Ct. App. 1999)); *Am. Fam. Mut. Ins. Co. v. Donaldson*, No. 12-cv-2855 (PAM/FLN), 2015 WL 366443, at \*3 (D. Minn. Jan. 27, 2015) (noting the "abundance of Minnesota case law upholding exclusions based on negligent criminal conduct"); *Scottsdale Ins. Co. v. RiverBank*, 815 F. Supp. 2d 1074, 1081 (D. Minn. 2011) ("In general, [Minnesota] courts have focused on the substance of the underlying conduct, rather than on whether the victim's subsequent cause of action for damages sounded in negligence."). That negligence may have contributed to Ms. McClurg's injuries does not bring those injuries within the scope of coverage of the Policy.

Accordingly, the Court finds that Ms. McClurg's injuries resulted from Mr. Burton's criminal disorderly conduct within the meaning of the Policy.

### B.    Public Policy Arguments

Defendants additionally contend that public policy counsels against applying the criminal-acts exclusion here. This argument is unavailing.

First, Ms. McClurg argues that Mr. Burton's disorderly conduct is less "severe" than the crimes committed by the insured in other cases holding that a criminal-acts exclusion bars coverage for the resulting injuries. (McClurg Mem. at 13–14.) Indeed, the two cases she cites involved an attempt at first-degree murder and a fatal car collision during the insured's flight from the police. *SECURA*, 755 N.W.2d at 322; *Progressive Preferred Ins. Co. v. McMorris*, 563 F. Supp. 3d 971, 980 (D. Minn. 2021). However, neither of these cases (nor any other case applying Minnesota law, according to the Court's research)

16

examined the egregiousness of the criminal act to determine if the exclusion applied. Indeed, in *Liebenstein*, the Minnesota Court of Appeals applied a criminal-acts exclusion where the insured dislocated the officer's thumb while resisting the removal of his handcuffs. 517 N.W.2d at 74. Neither the case law nor the plain language of the Policy support assessing the severity of the crime when applying the criminal-acts exclusion.

Second, Mr. Burton contends that the criminal-acts exclusion is so overbroad as to render coverage illusory because it applies whether or not the insured is charged with or convicted of a crime. (Burton Opp'n at 7–8.) This argument has been squarely rejected by Minnesota courts and federal courts applying Minnesota law. For example, the court in *Country Mutual Insurance Co. v. Orloske* examined a criminal-acts exclusion that applied regardless of whether the insured was "actually charged with or convicted of a crime." 2014 WL 7214834, at *1 (D. Minn. Dec. 17, 2014), *aff'd* 820 F.3d 335 (8th Cir. 2016). The district court rejected the insured's assertion that the exclusion was overbroad because "[the insured] was charged with and convicted of a criminal act, so he cannot complain about a hypothetical circumstance in which he was not." *Id.* at *4. So, too, in Mr. Burton's case.

Furthermore, this Court has previously considered the doctrine of illusory coverage when applying a criminal-acts exclusion:

> The concept of illusory coverage is viewed "as an independent means to avoid an unreasonable result when a literal reading of a policy unfairly denies coverage." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995). Under Minnesota law, courts have held that the doctrine is best applied "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* at 119. So, if, for example, under the facts of

17

some of the insurance coverage cases cited herein in which a third party assaults a patron of a nightclub or at an event, a premium was specifically allocated to provide coverage for non-employee assault or battery claims, this doctrine might apply. Here, however, there is no evidence that, for the sake of argument, a premium was specifically allocated for the criminal or fraudulent acts of an employee or officer. The illusory coverage doctrine is inapplicable here.

*Scottsdale Ins. Co.*, 815 F. Supp. 2d at 1085–86.

The doctrine is likewise inapplicable in Mr. Burton's case. Mr. Burton's Policy provides coverage for bodily injuries resulting from an "occurrence," defined in relevant part as "an accident, including exposure to conditions which results in: (1) bodily injury." (Policy at 14, 25.) Excluding coverage for Ms. McClurg's injuries here, where Mr. Burton pleaded guilty to and was convicted of a criminal offense, does not render the Policy's coverage for accidental third-party bodily injuries "functionally nonexistent." *Jostens*, 527 N.W.2d at 118; *see also BancInsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1076 (8th Cir. 2006) (denying application of the illusory coverage doctrine under Minnesota law where "[s]everal factual scenarios . . . would have clearly resulted in coverage under the policy"). The cases discussed earlier, approving of and finding unambiguous similar criminal-acts exclusions, demonstrate that coverage under Mr. Burton's Policy is not illusory.

In sum, the Court finds as a matter of law that the plain language of the criminal-acts exclusion in Mr. Burton's Policy excludes coverage for Ms. Burton's injuries. Consequently, the Court finds that Safeco has no duty to defend Mr. Burton against Ms. McClurg's lawsuit. Absent a duty to defend, the Court also necessarily finds that Safeco

has no duty to indemnify Mr. Burton. Accordingly, the Court grants Safeco's Motion for Judgment on the Pleadings.

## IV.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Judgment on the Pleadings [Doc. No. 22] as to Count I [Declaratory Judgment] is **GRANTED**.

2. Plaintiff has no duty to defend or indemnify Mr. Burton against Ms. McClurg's underlying action.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 17, 2023                               s/ Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge

19